E. Preston, Deputy Attorney General, for the Crown.

Honolulu, January 21st, 1876.

---

# SUPREME COURT—IN BANCO.

## JANUARY TERM—1876.

*Harris and Judd, J. J.*

---

### EMMA KALELEONALANI *vs.* HOOPIOPIO ET ALS.

ACCEPTANCE of rent by the owner of land creates a tenancy for the year for which payment was made, but it is not an adoption of a lease made by the grantor of the land subsequent to its sale.

#### OPINION BY HARRIS, J.

This action came on for trial at the last January term of the Supreme Court, and the jury returned a verdict for the defendants, to which the plaintiff alleged the following exceptions.

"At the trial of the above entitled cause the plaintiff

showed a deed of conveyance to herself from one Hikoni, dated June 24th, A. D. 1871, of the land in question, and also showed that said Hikoni had been in sole and adverse possession of said land as its owner for twenty years prior thereto, taking its rents and profits, and that the defendants were in possession of said land since April, A. D. 1873, claiming under a lease, and while in such possession that they had pastured cattle on said land, and sold off timber for fuel for which they received $150. One of the plaintiff's witnesses testified that he had bought said timber of the defendants and paid them said $150 therefor, which sum of money with $50 more added thereto, he sent in May, 1874, to the plaintiff to pay their rent, in the form of an order for $200 on H. Hackfeld & Co., also that he got a receipt that said order was paid. The plaintiff also showed the value of the mesne profits of said land, and a notice to quit and rested.

"The defendants claimed under a lease from said Hikoni dated April 9th, A. D. 1873, for a term of fifteen years, and a letter from the plaintiff dated April 16th, A. D. 1873, addressed to one Lilikalani, now deceased, and put on evidence that said Lilikalani attended to whatever business the plaintiff ordered him to attend to on the Island of Kauai from the time that she went to Kauai at some time in the year 1874. There was no evidence that said letter was ever shown to or known of by the defendants.

"The plaintiff excepted to the admission of said lease and letter and also to the refusal of the Court to instruct the jury that all the evidence relied on by the defendants could at the most merely affect the plaintiff's right to recover damages, or amount to a license to enter upon said land, or to a lease for not over one year from date of said letters, and could not prevent the plaintiff recovering judgment for said land.

"The plaintiff also excepted to the verdict rendered for the defendants as not sustained by law or evidence.

"All of which exceptions were duly taken and allowed."

At the hearing of the exceptions, the testimony sent up was supplemented by the statement of Hikoni that she had received rent for the land since her deed to the plaintiff, but that she had received no rent from it for two years.

It was made to appear at the trial, that the plaintiff received a deed of conveyance of the land of Lawai, on Kauai, the subject of this suit, from Hikoni, which deed is dated June 24th, 1871, and is duly acknowledged and recorded, on the same day.

On the 9th of April, 1873, Hikoni executed a lease in favor of the defendants for the same land, for fifteen years at the rental of $200 a year, and they immediately went into occupation of the land.

A letter of the plaintiff's to the late G. W. Lilikalani, is offered in testimony, dated 16th April, 1873, and containing the following passage: "I see what you say about the completion of the lease of Lawai to the natives, and that the papers are finished for $200 a year for 15 years. What do you think of this lease? If you think it is a good thing, then I will approve of it. What does Kakina think of it? Has he heard of this lease to others? But, I may see you by the Kilauea, and will talk with you then."

The defendants paid to Hikoni one year's rent, and the next year, having cut down some of the defendant's timber growing on the land and sold it for $150, sent an amount of $200 to the plaintiff as rent for that year, i. e. from May, 1874, to May, 1875.

It does not appear whether the plaintiff did or did not know whence the money was derived, but, it does appear that she had learned, by the month of November of that year, that they were cutting down timber, and was much dissatisfied thereat, and served them with a notice to quit, of which the following is a copy:

"HONOLULU, November 23d, 1874.

"Aloha to you:—Emma Kaleleonalani complains of your having cut wood on the land of Lawai. This land was con-

Emma Kaleleonalani *v.* Hoopiopio et als.

veyed by Hikoni June 24th, 1871, and Hikoni has since had no right there, and I forbid you occupying under the lease from Hikoni of May 1st, 1873, as that was invalid."

According to the plea of the native counsel for the defendants, Mr. Maioho, they tendered the rent for 1875-6 in April, 1875, and it was refused, and an action of ejectment was commenced September 28th, 1875.

Apparently, the defendants offered the lease to prove what they considered to be their title, and the letter to prove that the plaintiff, by her acts, had made the acts of Hikoni, her own acts. The letter and the deed might not be effectual for that purpose, but surely they are admissible evidence. Nor can it be said that the Judge at all erred in declining to instruct the jury absolutely, as to the weight they should give to the whole body of the testimony. He had probably dwelt on each individual testimony and its tendency, as much as in his judgment it was proper to do, and he left the consideration of the weight of the evidence to the jury.

The final exception is the general one that the verdict is not sustained by law and the evidence.

We would adhere to the practice of this Court not to disturb a verdict, simply because it seems to us against the *weight* of evidence, but if, on a review of the whole case, it shall appear that in order to have arrived at the verdict, the jury must have misunderstood the tenor of the evidence, or misunderstood and misapplied the directions of the Judge, or that the verdict is so strongly against the weight of evidence as to indicate bias or prejudice, it is our duty to set it aside.

In this case, it is certain that Hikoni made the deed to the plaintiff, and it does not appear by the deed that there was any reservation of rent to the use of the grantor; nor is such a reservation made to appear by any act or statement of the plaintiff. Then Hikoni had no right to lease the land after having made the deed to plaintiff. But it is said that Lili-

kalani was accustomed to transact any business for the plaintiff which she directed him to do, and that he drew up the lease. From this it is sought that we may infer that he did it for the plaintiff.

It seems to be a sufficient answer to this, that he did not sign the lease for the plaintiff; neither signing her name nor his own, but, as far as the evidence goes, merely acted as amanuensis for Hikoni. It is not shown in evidence, nor is it apparent by the deed, that the plaintiff gave Lilikalani any authority to act in the premises for her, nor did he claim to act in her name, or in her behalf.

The next question is, did the plaintiff ever ratify the lease, by act or deed, or rather is there any testimony that she did so ratify the deed or lease and adopt it for her own ?

The evidence on which the defendants rely to establish this proposition is,—first, the letter of the plaintiff to Lilikalani, dated April 16th, 1873, which is quoted above. The passage which is quoted, occurs in a letter conveying intelligence of interest about the writer, and the mutual acquaintance of the two correspondents; it was not intended for the defendants in any way, and most certainly contains no words ratifying, adopting or approving the lease; on the contrary, she expressly asks the opinion of her correspondent and Judge McBryde on the subject, and says that she will talk it over with Lilikalani when they shall meet together, and intimates that if it is a good lease she may ratify it. Surely this is very far from ratifying the lease.

And secondly, it is urged that in May, 1874, the plaintiff accepted rent for the ensuing year, and thus created a tenancy from year to year, (see Washburn on real property, vol. 1, p. 393, and note, and cases therein cited). This would only give them a right of occupancy for one year, i. e., to the 5th of May, 1875.

According to the answer filed by Mr. Maioho, the defendants tendered rent again in April, 1875, (i. e., before the day

stipulated in Hikoni's lease to them) for the next year, and it was refused. This would amount to an oral notice to quit, i. e., a notice that the right of occupation would terminate on the first of May, thence next ensuing. Now an oral notice is sufficient.

Again, on the 23d of November, 1874, they were served with a written notice to quit, as above set forth. Truly, this notice did not set any given day for them to leave; but they had been already warned in April; and the notice likewise contains a complaint of waste which was not insisted on at the hearing of the bill of exceptions, but which, if true, would take away from the defendants any right of notice which they might have had, and it appears by the testimony of Mr. Charman that the waste had been committed (see 1st Washburn on real property, p. 385, sec. 14). No particular form of notice is necessary, (see Parson's on contracts, p. 433). The English common law requires six months notice to terminate a tenancy from year to year, and many of the United States have adopted the same rule. In some of the States three months have been adopted, ending at the expiration of the year.

The notice of November 23d must be considered as a notice to quit at once, and it must be borne in mind that the previous refusal to receive the rent, which was tendered in April, was equivalent to a notice that the alleged tenancy from year to year would not be continued after the first day of May, 1875, so that at the date of the written notice, they were already holding over without more right than six months; but they did not even quit at the next May nor pay rent; nor, as far as it appears from the testimony, did they offer to pay rent.

This action was not commenced until September 28th, 1875, seventeen months after the refusal to acknowledge them as tenants, and ten months after the written notice, surely it cannot be said that the defendants did not have a

86

reasonable notice to quit before the suit was commenced.

The case then stands in this way on the evidence: Hikoni conveyed the land to the plaintiff and had no right, thereafter, to lease it to the defendants; there has not been shown any authority from the plaintiff to Hikoni, or to any one else to lease the land for her, for a term of years or for any time. Now the utmost effect, where one without authority lets another's land, and the tenant pays rent to the owner, is to create a tenancy from year to year. Such a tenancy terminated on the first of May, 1875, and from that time the defendants were wrongful holders. The defendants had much more than reasonable notice to quit, and the jury must have misapplied, or misunderstood the instructions of the Court with regard to the effect of plaintiff's letter to Lilikalani, or else they have not given due weight to plaintiff's title, to have rendered the verdict which they did. The evidence, as it is reported to us, does not sustain the verdict; and therefore it must be set aside.

We are asked to enter judgment for the plaintiff, *non obstante veredicto*. The defendants offered what evidence they were enabled to, or saw fit to offer, at the trial to convince the jury that Hikoni was the agent of the plaintiff, or that the plaintiff had acquiesced in the lease, or perhaps they relied on the idea that the conveyance was a voluntary one and not intended to operate until after Hikoni's death, and that they could prove that fact by the acts of the parties, and that consequently she had the right to lease the land during her life; and may have believed that they had introduced sufficient evidence to show some of these defences; though in our opinion they did not introduce any evidence calculated to make good any defence, yet it was sufficient to convince the jury at the trial before them, and we do not know what amount of evidence they may be enabled to add; we must decline to enter judgment for the plaintiff, but do order a new trial.

A. S. Hartwell for plaintiff.

E. Preston for defendants.